IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Criminal Case No. 18-cr-00266-PAB-4

UNITED STATES OF AMERICA,

    Plaintiff,

v.

4. OMAR HUMBERTO GONZALEZ-HERNANDEZ,

    Defendant.

---

## ORDER

---

This matter comes before the Court on Defendant Omar Humberto Gonzalez-Hernandez's Motion for New Trial [Docket No. 293], wherein defendant requests a post-verdict judgment of acquittal under Fed. R. Crim. P. 29 or, in the alternative, a new trial under Fed. R. Crim. P. 33.

## I. BACKGROUND

On July 10, 2018, defendant was indicted for conspiring to possess with intent to distribute methamphetamine in violation of 21 U.S.C. §§ 841(a) and 846. Docket No. 52. The second superseding indictment, filed on September 13, 2018, alleges in relevant part:

> [f]rom on or about October 15, 2016, through on or about May 12, 2018, within the District of Colorado and elsewhere, the defendants [Joanna Zarate-Suarez, Edwin Roman-Acevedo, Christina Fitzgerald, Omar Humberto Gonzalez-Hernandez, Jeremiah Serr] and others both known and unknown to the Grand Jury, did knowingly and intentionally conspire to distribute and to possess with intent to distribute a quantity of a Controlled Substance, namely more than 500 grams of a mixture and substance containing a detectable amount of Methamphetamine and

more than 50 grams of Methamphetamine, and did so with interdependence.

Docket No. 101 at 1-2. Defendant was tried with one of his alleged coconspirators, Jeremiah Serr, in February 2019. Docket No. 260. On March 5, 2019, the jury found defendant guilty of conspiring to distribute or to possess with the intent to distribute 50 grams or more of actual methamphetamine or 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine. Docket No. 274 at 1-2. On April 2, 2019, defendant moved for a post-verdict judgment of acquittal or, in the alternative, for a new trial. Docket No. 293. The government filed a response to the motion on April 16, 2019. Docket No. 301.

## II. ANALYSIS

### A. Motion for Judgment of Acquittal

The Court turns first to defendant's motion for judgment of acquittal. In considering a motion for judgment of acquittal under Fed. R. Crim. P. 29, a court views the evidence "in the light most favorable to the government, and without weighing conflicting evidence or considering the credibility of witnesses, determine[s] whether that evidence, if believed, would establish each element of the crime." *United States v. Fuller*, 751 F.3d 1150, 1153 (10th Cir. 2014) (quotations omitted). A court may enter a judgment of acquittal "only if the evidence that defendant committed the crime is nonexistent or so meager that no reasonable jury could find guilt beyond a reasonable doubt." *Id.* (quotations omitted).

Defendant contends that the Court should grant his motion for judgment of acquittal because the evidence presented at trial was insufficient to support his

conspiracy conviction. Defendant advances two principal arguments in support of this conclusion: (1) defendant's mere association with the other alleged coconspirators and acquiescence in the object of the conspiracy is not sufficient to support his conviction; and (2) even if defendant was involved in the May 2018 drug transaction, that transaction was separate and distinct from the conspiracies occurring in October 2016 and November 2016. Docket No. 293 at 4-9. Both of these arguments are unavailing.

Regarding the first argument, defendant mischaracterizes the evidence presented at trial. Contrary to defendant's assertion that there was no evidence showing his direct involvement in any aspect of the alleged drug conspiracy, *see* Docket No. 293 at 5 (stating that Ms. Fitzgerald "testified she had never had any direct dealings in the drug trade with the defendant" and that there was no evidence that defendant "did anything other than sit silently by during the conversations regarding drugs"), Ms. Fitzgerald testified to defendant's active participation in at least two transactions related to the conspiracy.[1] The first occurred in November 2016, when S.M., the girlfriend of Ms. Fitzgerald's Virginia buyer, flew to Colorado with Ms. Fitzgerald to pick up four pounds of methamphetamine. Ms. Fitzgerald testified that defendant and Ms. Zarate-Suarez picked her and S.M. up from the airport, after which Ms. Fitzgerald, Ms. Zarate-Suarez, and defendant formulated a plan to rob S.M. of the money that she had brought with her to purchase the drugs. Although Ms. Fitzgerald testified that defendant was "more so just listening to the conversation" about the robbery and "taking orders

---

[1] A more detailed summary of the evidence pertaining to the conspiracy can be found in the Court's order on defendant Serr's motion for a new trial. *See* Docket No. 322.

from [Ms. Zarate-Suarez]," the jury could have reasonably inferred that defendant was more than a passive participant in the transaction, especially in light of Ms. Fitzgerald's later testimony that defendant drove to pick her up with his headlights off after she committed the robbery.

According to Ms. Fitzgerald's testimony, defendant was also instrumental in the May 2018 drug transaction. Ms. Fitzgerald testified that she returned to Denver on May 7, 2018 to obtain six pounds of methamphetamine for the Virginia buyer. She testified that she went out to lunch with defendant and Ms. Zarate-Suarez on May 8, 2018, during which they discussed the prices of the drugs and their plans for completing the sale. Ms. Fitzgerald testified that defendant and Ms. Zarate-Suarez conversed in Spanish, which Ms. Fitzgerald could understand, during the lunch and that defendant expressed opinions on how much to charge for the drugs, whether to front the drugs to the Virginia buyer, and where the sale would take place. Finally, Ms. Fitzgerald testified that they scheduled the drug sale for the evening of May 9, 2018 because defendant was going to pick up the methamphetamine after he got off work. Defendant then accompanied Ms. Fitzgerald and Ms. Zarate-Suarez to Burlington, Colorado, where they were planning to meet Ms. Fitzgerald's Virginia buyer to complete the transaction.

To convict defendant of the conspiracy charge, the government was required to prove: "(1) an agreement by two or more persons to violate the law; (2) knowledge of the objectives of the conspiracy; (3) knowing and voluntary involvement in the conspiracy; and (4) interdependence among co-conspirators." *United States v. Foy*, 641 F.3d 455, 465 (10th Cir. 2011). While defendant is correct that "[o]ne does not

4

become a member of a conspiracy merely by associating with conspirators known to be involved in crime," *United States v. Hamilton*, 587 F.3d 1199, 1207 (10th Cir. 2009) (internal quotation marks and brackets omitted); *see also* Docket No. 293 at 7 (stating that "[a]ssociation with conspirators is insufficient to sustain a conviction for conspiracy"), "[e]ven a single overt act by [a] defendant can be sufficient to connect him to the conspiracy if that act leads to a reasonable inference of intent to participate in an unlawful agreement or criminal enterprise." *Hamilton*, 587 F.3d at 1207 (internal quotation marks omitted). Here, the evidence showed that defendant engaged in multiple acts which, viewed in a light most favorable to the government, support a reasonable inference that he knowingly and voluntarily participated in a conspiracy to distribute methamphetamine. The mere fact that defendant's participation never included the actual sale of methamphetamine is immaterial. *See Hamilton*, 587 F.3d at 1210 (stating that it was "irrelevant to the question of [the defendant's] participation in [the] drug organization that [his activities] did not directly pertain to the distribution of drugs, but rather the collection on drug debts"); *United States v. Smith*, 26 F.3d 739, 744 (7th Cir. 1994) ("Joining a distribution conspiracy does not require an agreement to distribute personally."). The critical question is whether defendant "shared a common purpose" with the other alleged coconspirators and acted in furtherance of the conspiracy's objectives. *Hamilton*, 587 F.3d at 1208-09 (stating that the requirement of interdependence is satisfied if "the alleged coconspirators were united in a common unlawful goal or purpose and if a defendant's activities facilitated the endeavors of another alleged coconspirator or facilitated the venture as a whole" (emphasis and

internal quotation marks omitted)).  The Court finds that the government's evidence was sufficient to make this showing.

Defendant also contends that the evidence established the existence of multiple conspiracies rather than the single conspiracy alleged in the indictment.  To the extent defendant is claiming that there was a variance between the conspiracy charged in the indictment and the evidence adduced at trial, this argument fails.  The fact that Ms. Fitzgerald's incarceration between December 2016 and January 2018 temporarily halted operations does not, without more, establish that the May 2018 transaction was "separate and distinct from the other two conspiracies occurring in October 2016 and November 2016."  Docket No. 293 at 7; *see United States v. Alcorta*, 853 F.3d 1123, 1139 (10th Cir. 2017) (stating that a coconspirator's arrest does not automatically terminate a conspiracy or result in the coconspirator's withdrawal from the conspiracy); *United States v. Caldwell*, 589 F.3d 1323, 1330-31 (10th Cir. 2009) (stating that "a lapse in time does not necessarily convert a single conspiracy into multiple conspiracies," but that "time *in combination with other factors*" may be sufficient (emphasis added)); *United States v. Williamson*, 53 F.3d 1500, 1514 (10th Cir. 1995) (finding that seven-month hiatus did not sever the single conspiracy alleged in the indictment into two separate conspiracies, where "operations resumed with the same participants, the same conspiratorial objective and the same course of conduct").[2]

---

[2]The jury was also free to disregard Ms. Fitzgerald's testimony that there was no ongoing agreement related to the distribution of drugs, especially given Ms. Fitzgerald's statement that, at the time she went to prison in December 2016, she still owed Ms. Zarate-Suarez money for the methamphetamine that had been dissolved in a container of water in November 2016.

Moreover, even assuming the evidence did support the existence of multiple conspiracies, defendant has made no effort to show that the variance was prejudicial. *See United States v. Sells*, 477 F.3d 1226, 1237 (10th Cir. 2007) ("The defendant bears the burden of proof both to show that a variance occurred and that it was fatal.").

As defendant acknowledges in his motion, the jury was properly instructed that "[p]roof of several separate conspiracies is not proof of the single, overall conspiracy charged in the indictment," and that "proof that a defendant was a member of some . . . conspiracy [not charged in the indictment] is not enough to convict." Docket No. 271 at 22. Based on the evidence presented at trial, the Court finds no reason to believe that the jury disregarded these instructions. Accordingly, the Court will not disturb the jury's determination that defendant was a member of the single conspiracy charged in the indictment.[3]

### B. Motion for New Trial

Defendant requests, in the alternative, that the Court grant his request for a new trial under Fed. R. Crim. P. 33 because the government's case was predicated entirely on the uncorroborated testimony of Christina Fitzgerald. Docket No. 293 at 9.

Fed. R. Crim. P. 33(a) provides that, "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." "Although a trial court is afforded discretion in ruling on such a motion, and is free to

---

[3]The Court also will not grant defendant's motion for judgment of acquittal merely because much of the government's case rested on the testimony of Ms. Fitzgerald. *See United States v. Dewberry*, 790 F.3d 1022, 1029 (10th Cir. 2015) (stating that the court would not "reverse a conviction merely because the verdict was grounded on the uncorroborated testimony of a coconspirator").

7

weigh the evidence and assess witness credibility, a motion for new trial is regarded with disfavor and should only be granted with great caution." *United States v. Quintanilla*, 193 F.3d 1139, 1146 (10th Cir. 1999). Thus, the power to grant a new trial on the ground that the jury's verdict is contrary to the weight of the evidence "should be invoked only in exceptional cases in which the evidence preponderates heavily against the verdict." *United States v. Evans*, 42 F.3d 586, 593 (10th Cir. 1994) (internal quotation marks omitted).[4]

That standard has not been in this case. Defendant argues that Ms. Fitzgerald's testimony was "unbelievable on its face" because it was both uncorroborated and shaped by her "desire to save herself." Docket No. 293 at 9-10. However, Ms. Fitzgerald's testimony was largely consistent with the statement she made at the time of her arrest. *See generally* Exhibit 33 (May 10, 2018 interview with Christina Fitzgerald). There was also independent evidence presented at trial that supported aspects of her testimony, including testimony by law enforcement agents placing defendant at

---

[4] In *Dewberry*, the Tenth Circuit indicated that "[s]ufficiency-of-the-evidence challenges made in a Rule 29 or Rule 33 motion are adjudicated and reviewed under the same standard." 790 F.3d at 1028. This statement appears to conflict with Tenth Circuit precedent establishing that a district court may weigh the evidence and assess credibility on a motion for a new trial under Rule 33. *See Quintanilla*, 193 F.3d at 1146; *Evans*, 42 F.3d at 593-94; *see also United States v. Cesareo-Ayala*, 576 F.3d 1120, 1126 (10th Cir. 2009) (noting that a district court "may order a new trial when it perceives that the jury improperly weighed some of th[e] evidence," but that "courts of appeals routinely affirm the denial of . . . new-trial motions [based on the weight of the evidence] once they have upheld the sufficiency of the evidence"); 3 Charles Alan Wright et al., *Federal Practice and Procedure* § 582 (4th ed.) (updated Apr. 2019) (noting that a motion for a new trial asserting that the verdict was against the weight of the evidence is governed by a different legal standard than a motion for judgment of acquittal under Rule 29). However, even under the more favorable standard, defendant has failed to show that the weight of the evidence goes against the jury's verdict.

Santiago's restaurant with Ms. Zarate-Suarez and Ms. Fitzgerald on May 8, 2018, cell phone location data showing that defendant accompanied Ms. Fitzgerald and Ms. Zarate-Suarez to Burlington, Colorado on May 9, 2018, Exhibit 154 at 8; Exhibit 155 at 1-2, and text messages indicating that defendant was upset by their failure to complete the drug sale on that date. *See* Exhibit 139 at 39 (text message from "Gorda" stating that "Negro was kinda tripping"). The mere fact that Ms. Fitzgerald stood to benefit from her cooperation with the government is not a sufficient basis, standing alone, to find her testimony incredible. *See Dewberry*, 790 F.3d at 1029 (noting that witnesses are frequently offered plea deals in criminal prosecutions and that this fact "does not necessarily render testimony incredible").

For the foregoing reasons, the Court is unable to conclude that this is one of the "exceptional cases" in which the "evidence preponderates heavily against the verdict." *Evans*, 42 F.3d at 593 (internal quotation marks omitted). Accordingly, defendant's motion for a new trial will be denied.

### III. CONCLUSION

Wherefore, it is

**ORDERED** that Defendant Omar Humberto Gonzalez-Hernandez's Motion for New Trial [Docket No. 293] is **DENIED**.

DATED April 30, 2019.

BY THE COURT:

s/Philip A. Brimmer
PHILIP A. BRIMMER
Chief United States District Judge